1934-89. And we will hear first from Ms. Rameh. Good morning, Your Honors, and may it please the Court. My name is Colleen Rameh, and I am appearing on behalf of Edward Bruce, the defendant of Holloman v. Gates. I'm quoting from the District Court at sentencing. There was some body armor that was found in the house. Maybe that's attributable to someone else, but if it doesn't fit him, it shows that he is hanging around with people who have a use for body armor, which is dangerous. The Court went on to explicitly discuss how this body armor suggested that Mr. Bruce's offense was more dangerous than the elements of conviction would otherwise suggest. And then mere minutes later, only 10 pages in the sentencing transcript, in imposing Mr. Bruce's sentence, the Court hearkened back to, quote, all of the rest that it had brought up, when concluding that the circumstances surrounding the offense that made it violent, where somebody could have been killed. It is undisputed here that the record does not support the Court's factual assertion that there was body armor found at the scene. The District Court clearly stated that it found this to be an aggravating fact, as it implied other dangerous activity that gave context to the specific actions in this case. And, you know, Mr. Bruce certainly doesn't contend that his fleeing from the police officers when they came to arrest him was, you know, inappropriately considered by the Court. But the Court certainly gave a reference to this body armor, this finding of body armor, as context for the broader, for his crimes. Because, as the Court acknowledged, Mr. Bruce was a low-level drug dealer, and his, you know, his crimes in and of themselves were not terribly violent or otherwise. Ms. Ramirez, on the facts here, the Court, in addressing the 3553A factors, specifically noted that the drugs recovered included heroin and fentanyl, which is extremely dangerous. That your client resisted arrest. That he fled within his home. That there was some scuffle with the officer that ended up in a broken arm for the officer. He possessed a loaded gun that had an extended magazine. Given all of those factors, how can you establish that it's, and the fact he got a low-end guideline sentence in this case. How can you establish a reasonable possibility of a different sentence, given those strong words and those facts? Certainly, Your Honor. I think that, in this case, it really just turns on the fact that the Court so explicitly addressed this idea that, in addition to, obviously, those aggravating factors, there was this information that the Court believed to be true. That there was this body armor at the scene and, therefore, that implied that, above and beyond those, obviously, aggravating facts, that there was additional activity that required an even heightened level of protection. Can you really say that when the Court, and I'm looking at the transcript, when the Court talks about the body armor, which was not a fact here. Sure. He says, well, maybe it's attributable to somebody else, but then he's hanging around with the wrong people. So he seems to shrug off that, well, maybe it wasn't Mr. Bruce's. Maybe it's somebody else's. Is he really putting that much emphasis on it, given that language? You know, I would argue that he is. I mean, you know, we can't, I'm not standing here and arguing that this is the sole factor that he was considering as an aggravating factor. That it just is not in line with the transcript that we're looking at. Mr. May, do you agree that this was a low-end guideline sentence? The range was 46 to 57, right? And he gets a 50-month sentence. So it's really mid-range. It's a little, the low end, if it had been 51, it would have been right smack dab in the middle. But, in fact, it was 50. Precisely, yeah. So it wasn't, there's plenty of room to go down further if you wanted. Of course, yes. He could have gone down further. And we do have the fact that he had a 924C conviction. So his total sentence was still, you know, 110 months. And often the 924C conviction, especially given, you know, Mr. Bruce did have several mitigating factors in terms of his background. And the fact that he was a low-level drug dealer and all of those. The court considered, you know, he could have gone lower. And, in fact, his counsel was asking for a below-guideline sentence considering the mandatory five-year sentence on the 924C. The court did consider those mitigating factors. So you're not contesting that, are you? No, no, no. I'm not contesting that he considered them. My argument here is that this is one, this body armor and it's in the implication that either Mr. Bruce or one of his associates in the house was engaging in, you know, a higher level of dangerous conduct was considered an aggravating factor based on the explicit discussion by the judge. And then when he imposed the sentence, he hearkened back to all of these things that I have mentioned. So not only did he say, oh, you know, there was the Mr. Bruce's specific behavior during the arrest, but he said, and the other, and given all the rest that I brought up. And I think it's reasonable to read this transcript as all the rest that I brought up is including the reference to the dangerousness that the body armor conveyed when he was speaking mere minutes before, just before defense counsel had given his argument. And so, you know, for that reason, I believe that we can establish that there is, while we can't establish for sure that if the court hadn't been under this misapprehension, that there was this body armor found at the scene, that his, the sentence would have been different. But there is this distinct possibility that the district court's misunderstanding of the facts of the case affected its sentencing assessment. And therefore, you know, even under the plain error standard of review, it would be appropriate to send it back to allow the district court to sentence Mr. Bruce, given an accurate understanding of the facts. And unless there are further questions, I'll reserve the remainder of my time for about. All right, thank you. Tomlinson. Thank you. Good morning, Your Honors. May it please the court. My name is Vincenza Tomlinson and I represent the United States. The district court's sentence of the defendant should be affirmed because the district court did not rely on inaccurate information when it sentenced the defendant. And because the defendant has not shown that his substantial rights were affected. But when you say the district court didn't rely, we all agree that there was inaccurate information. And we all agree that in sentencing, defendants do have even a due process right to be sentenced on the basis of accurate information. So how can we be so confident that this, you know, didn't cause, you know, a month more or, you know, anything? The Supreme Court has said that even a small increment in sentence is enough to make a difference. Well, Judge, because the reason is that the standard here is that in order for you to show error, the district court had to have relied on that information when it sentenced the defendant. And how do we know it didn't? I mean, what Ms. Ramay argues, and frankly, the government makes this argument on the other side all the time. The government, you know, people will complain that the 3553A factors weren't looked at or different things. And the government says, oh, you have to look at the whole discussion of the district judge. And even though the judge mentioned something 12 pages earlier, it doesn't mean that the judge didn't have it into account. So really, that's all that Ms. Ramay is doing, saying he talked about it. It wasn't the longest of sentencing transcripts any of us has ever seen. He raises this point about the body armor, which, you know, he just must have had it. I'm sure it was an innocent mistake, you know, just some other case in mind. But it was an aggravating factor, and we are not in a good position to know. You may be right if we send this back to re-sentence. The judge may just slap the same 50-month sentence on again, but that's not the standard. Well, Judge, we know that the court didn't really rely on that accurate information because he specifically says, or the district court specifically says what he did rely on. And body armor didn't come into play at all. I thought the reference to Ms. Thomas, and I thought the reference, I know the passage you're talking about on page 66 or appendix page 36. But below that, as Ms. Ramay accurately observes, there is a reference to given all the rest that I brought up. So why isn't that a reference to the bulletproof vest? Well, Your Honor, I would submit that when he talks, when the judge is stating that, all the rest I mentioned, if you look back at what the actual record says, he's going through all those 3553 factors, such as the mitigation that the defendant brought up, the defendant's attitude during elocution, the defendant's arguments. He even tells the parties and through the transcript what he's relying upon, the sentencing memorandums, the arguments of counsel, the probation records, the defendant's criminal history, the natures of the offense. So in none of that, none of that does the idea of body armor come up or the potential use or possession of body armor come up. So it's just hard pressed to say. On the other side, if you go back to page 26, the court is certainly relying on the things that the court is rehearsing there, that he fled, tossed a weapon away, the weapon was loaded, it had an extended magazine. The body armor paragraph comes right there. So you're asking us to just delete it? It's right there in the middle. It looks like it's page 14 of the transcript. It's appendix page 26 of the blue brief. Right. And, you know, if you look at where that is situationally in the record, and this court has said in recent cases and probes that the timing and the context of where that inaccurate information comes in is crucial. But the context I'm giving it is it's embedded in very important factors. It's embedded in the fleeing. It's embedded in the extended magazine and so forth. So he's not off there talking about something completely unrelated. But I would suggest that when the court actually lays down a sentence and imposes sentence, he never goes back to this idea of body armor. And I would suggest that had the body armor been something significant to the district court, something that it was relying on to establish a sentence, it would have been at that point again where the district court said, hey, look at this body armor that the defendant had or possessed, or maybe he's hanging around with the wrong crowd, and that's the idea of the dangerousness of the body armor. But that's not what happened here. He totally separated those out, and maybe that's because at some point the district court realized that nobody was addressing that situation, or maybe that's because it just didn't become. That's just speculation. The very next paragraph after the body armor, he's saying, you've asked me for something that would be a downward variance. I will go over what you've raised. And then he says, but there is some dangerous things that I see regarding this offense. And then he just promises to consider everything. So, I mean, I don't have a window into his brain, but I'm concerned about the way this unfolded. Sure. And, Your Honor, the court did not, the dangerousness that the court was talking about was the dangerousness associated with the crime itself, and the district court laid out everything that he found in the crime itself, and he did not mention again the body armor when he sentenced. But he doesn't say that in the point that I just referred you to. That's not what he said. He just said there's some dangerous things that I need to think about. Right. And he just mentioned the body armor as well as the other aggravating factors. And I would go to the fact that had the body armor been something that the court was honing in on or was going to base its sentence on, and this shows that he didn't rely on this sentence, was this the inaccurate information. And that is the standard here. We have to look at what the court relied on and what it said. And what it said was I'm going to, it's the possession of heroin that's laced with fentanyl. It's the fact that he had a weapon. It's the fact that the weapon was loaded, that he fled from police, that he resisted police, that he broke an officer's hand in the process of resisting. Then he proceeds to go into the rest of the 3553 factors, again, not mentioning anything about this body armor. He talks about the defendants, as Justice Staney had mentioned, he talks about the mitigation and he addressed the defendants' mitigation. Again, this was only mentioned one time, even though I know Your Honor is talking about it being part, initially when he was discussing dangerousness, but he never brings it back up again. He doesn't bring anything back up again. It's a very short transcript after he goes through mitigating 3553. Well, and Your Honor, here too, he didn't even potentially attribute the body armor to the defendant, which I think you can consider, but what's crucial here is when it was time to sentence the defendant, he didn't even mention it. He even states in page 38, he even goes a step further. I've looked at it. I've weighed all the factors that I just recited. So we look at that, and that's his explicit telling this court, this is what I'm relying upon. I cannot go below the guidelines, the court says, for all that I have just said. And if you look at that, what he had just said was talking about those bit through 3553 factors that I just mentioned. It wasn't the body armor that came several pages before, before the defendant's elocution, before the defense attorney's argument. So it didn't even pop its head up into the sentencing rationale. And further, and this gap, the court has said, this timing gap actually counsels against the conclusion that the court specifically considered the misinformation. And Your Honors, even if there were error, as Your Honor has stated, his rights have not been substantially affected as was previously brought up. Assuming there was error, has the defendant been able to show that there's a reasonable probability that his sentence would have been different? And he has not been able to show that. There was an agreed guideline range of 46 to 57 months. He's not been able to show that that four months above the low end of the guidelines was attributable to this inaccurate information. But that's very hard to show, though, unless the district court has made the kind of statement that they sometimes make, saying, and if I've missed anything about the guideline calculation, I'm just stating for the record that this is the sentence that I regard as a fair and just sentence for this defendant, in the exercise of my 3553A discretion. No statements like that appear here. I see that my time has run out. Can I answer Your Honor's question? Yes. Your Honor, it may be somewhat difficult, but the problem here is that that's not the standard is whether that his substantial rights were affected. And when we look at whether someone's substantial rights were affected, the cases show where something like a misappropriation of guidelines or an improper in guideline range, or that the court relied on an extra conviction or that the defendant was a seven time convicted felon versus a six time convicted felon. Those are the cases where we talk about affecting substantial rights. This is not that case. There is no miscarriage of justice here. And for those reasons, we are asking that you affirm the district court sentence. Thank you. Thank you very much. Anything further, Ms. Romay? Yes, Your Honor. Thank you. I just wanted to point out that the, you know, the context in which this arose was that the court specifically put a highlight of this information. And in inviting comment from defense counsel and, you know, in a perfect world, defense counsel would have corrected the court. And there would have been, you know, we would have hashed this out in the district court. And the district court would have been informed as to the accurate information. But that's just unfortunately not what happened here. The court specifically pointed to this information and specifically expressed concern about it, regardless of whether it belonged to Mr. Bruce. You know, obviously, if the court had had information that this body armor belonged to Mr. Bruce, it may have been even further aggravating, but indicated that it was an aggravating and concerning fact that it was considering in the sentence. And so the mere fact that it came a few minutes before the court ultimately imposed sentence, in this case, we're looking at a situation where the court is weighing some significant mitigating factors against some significant aggravating factors. And it's reasonable to conclude from the transcript that we have that this misinformation was one of the aggravating factors that the court was relying on. And in that case, as Judge Wood has pointed out, maybe if the court hadn't been under this misapprehension, it would have imposed a 47 or 48 month sentence instead of the 50 month sentence. And Mr. Bruce's substantial rights to an additional two, one or two months or any amount of time not in prison were affected. And we cannot rule that out. And I urge this court to find that Mr. Bruce's substantial rights were affected and allow the district court to reweigh the factors based on accurate information in this case. Thank you very much, Your Honor. Thank you very much. Thanks to both counsel. We will take the case under advice.